## JAMES COSENZA
vs.
## HIGH GRADE MEAT MARKET, INC., ET AL.

Superior Court    New Haven County    File #46930

Present:   Hon. JOHN A. CORNELL, Judge.

Vincent A. Dooley,
John J. Sullivan, Jr.,    Attorneys for the Plaintiff.

Pond, Morgan & Morse,    Attorneys for the Defendant.

**MEMORANDUM FILED NOVEMBER 20, 1935.**

CORNELL, J.   It is found here, as claimed by defendant and conceded by plaintiff on the trial, that the operator of the plaintiff car, Frank Cosenza, was the servant and agent of the plaintiff, acting within the scope of his authority and in the course of his employment at the time that, and immediately before, the collision occurred.

The testimony given by the plaintiff and his agent on the one side and that given by the defendant's agent (the driver of the defendant's car) as supported by defendant on the other, is irreconcilable.

It agrees neither as to the point where, nor the direction taken, by the plaintiff truck as it entered the intersection; nor the place where, on Munson Street the collision occurred, nor the position with respect to the north or south curb lines of that street that the cars occupied immediately after the accident, to say nothing of other details of more or less importance.

So complete a variance is at least suggestive of something more than mere loss, or defect of, memory.

Recourse must, therefore, be had to the testimony of other witnesses, having, at least, some appearance of disinterestedness and to the only physical evidence (aside from what is shown on the map, Ex. A) not sought to be established out

of the mouths of witnesses, viz., the damage done to the plaintiff truck, as shown in the photograph, Ex. B.

Since the point where the plaintiff truck entered the intersection and the direction then being, and thereafter, followed by it, are important facts, the point on the highway where the vehicles stood immediately after the collision, their relative positions and the way each faced is of some aid in determining which version of the preceding events may be the more probably true.

On this latter point, the testimony of the witnesses, Trotter for the plaintiff and Noa for the defendant is susceptible of substantial reconciliation in important particulars.

Trotter states that the plaintiff car when it came to rest pointed in a generally northeast direction on Munson Street with its front end about a foot away from the north curb of that highway in a position close to the westerly curb line of Ashmun Street as extended north across Munson Street, but east of it, and that the defendant car was alongside plaintiff's on the latter's left, pointing in a generally north-northeast direction.

The position of these cars, says Trotter, was such that there was ample room for a pleasure car to drive between the rear of plaintiff's (which lay substantially on a line with but at an angle from the southwest corner of Munson and Ashmun Streets) and the south curb of Munson Street. Since Munson Street is 27 feet curb to curb and plaintiff's truck 17 feet from front bumper to the end of the overhanging tank carried on its chassis, if it stood in the position described by Trotter, there would be the space he states and credence is thereby lent to this witness' recital that he, in fact, did drive his car between the end of plaintiff's truck and the south curb of Munson Street.

Trotter's testimony completely demolishes that of defendant and the driver of his car, if it is true and its truth is borne out in substantial particulars by the testimony of defendant's witness Noa. The latter testifies that the rear end of plaintiff's truck was within 6-7 feet of the southwest corner of Munson and Ashmun Streets, but says the front end of it was up against the north curb of Munson Street. A very simple mathematical computation will demonstrate that Noa's testimony in reality confirms Trotter's and both offer a striking

repudiation of defendant's contention that the plaintiff truck stood, immediately after the collision, in a position whereat its front end was near the center line of Munson Street and the middle of the rear portion opposite the southwest corner and about 3-4 feet from it.

This determination is obviously important as a substantial contribution to the establishment of a fact which repudiates defendant's contention that the plaintiff truck "cut the corner" to its left in entering Munson Street and at the same time it lends support to the plaintiff's claim, supported by Trotter's testimony that he came into the intersection well on the right side thereof and made a wide swing in then turning to his left.

Without further discussion it is found that plaintiff has established all of the allegations of negligence on defendants' part as named in paragraph 5 of his complaint with the exception of the last. The latter states no cause in that it omits to add that the vehicles were arriving at the intersection at approximately the same time. **Hall vs. Root, 109 C. 33; Mesire vs. Kuchenstein, 109 C. 81; Estabrook vs. Main, 110 C. 276; Neumann vs. Apter, 95 C. 701.**

It is likewise, found that the driver of the plaintiff truck was free of contributory negligence, and that defendant's Brown, negligence was a proximate cause of plaintiff's injuries

As to the damages to be assessed, one of the elements alleged (paragraph 8) is:

"He was gainfully employed prior to said injuries in the sale by retail of fuel oil for domestic use, earning approximately $50.00 per week. By reason of said injuries, plaintiff has lost his income from the date of his injuries to the date of this writ and will be unable to return to his former work for some time in the future."

Evidence introduced to support this allegation depicts the plaintiff as in the business of selling and delivering fuel oil, using the truck for that purpose and employing and paying his brother. There is evidence that his earnings from this activity before the accident were $30-$35 per week.

It is, also, recounted that, for a period of 4-5 weeks immediately following the collision, another man was hired to aid plaintiff's brother in making deliveries and then another brother, Alfred, has worked a couple of days per week.

From this it appears evident that plaintiff's income was measured by the profits which he made from the business in which he was engaged. The evidence may fairly be viewed as fixing these as $30-$35 per week before the accident.

It may be inferred that if the receipts from the business and all operating and other expenses except that of additional help remained substantially the same during plaintiff's incapacity, then the plaintiff's net income from the business was depreciated to the extent of additional outlays for labor to take the place of what he himself, would have furnished had he not been prevented from so doing.

The evidence, however, throws no light on these details and is in such a state that it is impossible to tell from it what loss, if any, plaintiff was subjected to on this account.

Before entering judgment, there should be a further hearing to afford opportunity to plaintiff to correct this obvious oversight and of course, ample opportunity afforded defendant to meet any new evidence which may be introduced at such hearing.

Unless, in the meantime, counsel find it possible to agree on the sum to be awarded for this element of damages, the matter will be set down for Tuesday, November 26, 1935 at 10:00 o'clock A. M.